**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

AMY SHROFF,
LAILA KRUSE, a minor by her mother and next friend AMY SHROFF,

Plaintiffs,

v.

FRANK SPELLMAN, in his official and invidual capacity,
CITY AND COUNTY OF DENVER, a municipality,
WILLIAM LOVINGIER, in his official capacity,
UNKNOWN DENVER DEPUTY SHERIFFS, in their official and individual capacities,

Defendants

---

# COMPLAINT

---

Plaintiffs AMY SHROFF and LAILA KRUSE, by and through their attorney, David A. Lane of KILLMER, LANE & NEWMAN, LLP respectfully alleges for their Complaint as follows:

## INTRODUCTION

1. This is an action for damages against Defendants for violating Plaintiffs Fourth Amendment of the Constitution of the United States. Plaintiffs allege that Defendant SPELLMAN violated SHROFF'S Fourth Amendment rights when, intentionally, knowingly, recklessly, and with deliberate indifference to her constitutional rights, subjected her to an intrusive, unjustified, and illegal search and seizure without any basis for believing she was engaged in criminal activity. SPELLMAN arrested SHROFF for allegedly violating a

restraining order he claimed prohibited her from contact with her former boyfriend. In fact, the restraining order did not preclude any such contact, but *only* prohibited her ex-boyfriend from contacting her.

2. SPELLMAN arrested SHROFF in violation of her Fourth Amendment rights, knowing that SHROFF'S baby, LAILA KRUSE, needed her mother's milk for nourishment and was unable to digest formula due to a pre-existing medical condition and that KRUSE would not have access to her mother's milk for over a twenty-four hour period while SHROFF would be incarcerated.

3. As a result of this false arrest, SHROFF'S new born baby, LAILA KRUSE was unable to nurse on her mother's milk and became ill due to a pre-existing condition which made it impossible for her to digest formula.

4. SHROFF was permitted by SPELLMAN to use a breast pump at the police station but only in the presence of another officer, thus violating her right to privacy.

5. Once at the Denver City Jail, SHROFF was denied the use of her breast pump causing her breasts to swell and become extremely painful. LAILA KRUSE was deprived of her mother's milk and became ill as a result, and that the UNKNOWN DEPUTY SHERIFFS were made known of the medical condition of LAILA KRUSE which caused her to be unable to digest anything but her mother's milk.

6. It is alleged that the UNKNOWN DEPUTY SHERIFFS acted unreasonably in depriving SHROFF of the ability to breast feed her baby or to use a breast pump and that defendant LOVINGER has failed to adequately train or supervise his deputies in this regard.

7. It is further alleged that DENVER has as a custom, practice and policy that it fails to

adequately train or supervise jail staff in how to address these sorts of needs of prisoners in their custody.

**JURISDICTION & VENUE**

8. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343 and 2201. Jurisdiction supporting Plaintiffs' claims for attorney fees is conferred by 42 U.S.C. § 1988.

9. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the state of Colorado, and all of the parties are residents of the state. At all pertinent times mentioned herein, each Defendant was employed by the City and County of Denver, State of Colorado, and was acting under color of state law.

**PARTIES**

10. At all pertinent times mentioned herein, Plaintiffs were citizens of the United States of America, residents of Colorado.

11. Plaintiff SHROFF is the mother of an infant child, Plaintiff KRUSE.

12. At all pertinent times mentioned herein, Defendant SPELLMAN was a police officer employed by the City and County of Denver.

13. Defendant LOVINGIER is the Under sheriff for the City and County of Denver and is the final policy maker for the Denver jail system, including the jail in which SHROFF was incarcerated.

14. Defendants UNKNOWN DEPUTY SHERIFFS were at all times employed by Defendant CITY AND COUNTY OF DENVER, and trained and supervised by Defendant

LOVINGIER acting as guards at the Denver City Jail where SHROFF was incarcerated.

15. Defendant CITY AND COUNTY OF DENVER is a municipal entity for purposes of § 1983.

16. At all times, all Defendants were acting within the scope of their duties and employment, under color and authority of state law, and in their official capacities as law enforcement officers.

**FACTUAL BACKGROUND**

17. On February 23, 2006, PLAINTIFFS were traveling to a Denver police substation for a court-ordered child custody exchange with SHROFF'S ex-boyfriend's parents. SHROFF was going to drop of KRUSE with her paternal grandparents for visitation with her father, Greg Kruse.

18. On the way to the police station exchange point, SHROFF spotted Greg Kruse's truck parked outside of a bar. Because she knew he had a drinking problem and she wanted to show the court proof of this, she snapped a photograph of his truck outside of the bar. Greg Kruse apparently saw her as he left the bar.

19. SHROFF proceeded to the police station and shortly thereafter, Greg Kruse arrived at the police station.

20. As SHROFF was leaving the police station, Greg Kruse arrived and used his truck to block her exit from the parking lot.

21. SHROFF went back inside and informed Defendant officer SPELLMAN about this fact. SPELLMAN called Greg Kruse on his cellphone and told him to return to the station for investigation.

22. SHROFF showed SPELLMAN the restraining Order previously issued by the Denver County Court and in full force and effect on that date mandating that Greg Kruse stay away from SHROFF.

23. SPELLMAN was given a copy of the Order and he appeared to read it. SPELLMAN then declared that he was going to arrest SHROFF (not Greg Kruse) as SPELLMAN declared that it was a reciprocal Order mandating that she stay away from Greg Kruse as well as he stay away from her.

24. SHROFF and her step-father, Bill McAdam, who was also present, attempted repeatedly to show SPELLMAN that the Order was not reciprocal and only prevented Greg Kruse from coming near SHROFF.

25. Despite having the Order in his hands, despite SHROFF'S and McAdams's entreaties to SPELLMAN, he arrested SHROFF and charged her with violating the restraining Order and threatened to arrest McAdam if he did not "shut up".

26. While awaiting transport to the City jail in downtown Denver, SHROFF informed SPELLMAN that she was nursing her new born baby, LAILA KRUSE and the baby had a condition which prevented her from digesting formula and she required breast feeding. She begged not to be arrested as she would have no way of providing her milk to Plaintiff KRUSE as she had almost no frozen breast milk available and the baby would not be permitted to go to the jail with her mother.

27. Finally, after much pleading, SPELLMAN brought in a female officer who watched while SHROFF used an electric breast pump get milk for LAILA KRUSE.

28. SHROFF felt humiliated and demeaned by having to pump milk for her baby in the

presence of a stranger.

29. SHROFF was then transported to the Denver City Jail in downtown Denver.

30. At the jail, she informed numerous deputy sheriffs that she was breast feeding and needed to pump her breasts and provide the milk to Bill McAdam who could then give it to LAILA KRUSE.

31. Every deputy sheriff SHROFF begged refused to take any action to permit SHROFF to pump her breasts, save the milk and deliver it to Bill McAdam. One or more deputies referred to SHROFF as a "rich bitch" who believed she deserved "special treatment."

32. The denial by the Defendants of SHROFF'S request to pump her full breast led to pain and extreme discomfort for SHROFF in her breasts.

33. Finally, after approximately 24 hours after being incarcerated, the jail permitted her to pump her breasts and give the milk to Bill McAdam.

34. By this time, LAILA KRUSE had become ill from drinking formula which she is medically unable to digest.

35. SHROFF was finally bonded out of jail at approximately 6:00 p.m. on February 24, 2006.

36. All criminal charges against SHROFF were immediately dismissed.

37. The actions of the defendants caused SHROFF and KRUSE to suffer physical pain and great emotional distress.

38. The actions of the defendants were done knowingly, intelligently willfully and wantonly knowing that these actions were outrageous and would cause severe emotional distress to Plaintiffs.

**FIRST CLAIM FOR RELIEF**
(§ 1983 Fourth Amendment Violation – Unlawful Seizure
Plaintiff Shroff and Defendant Spellman only)

39. AMY SHROFF incorporates all other paragraphs of this Complaint for purposes of this claim.

40. The actions of Defendant SPELLMAN as described herein, while acting under color of state law, intentionally deprived SHROFF of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including her right to freedom from unlawful seizures as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that the Defendant had no probable cause or reasonable suspicion to believe that SHROFF had committed any violation of the law prior to seizing her person pursuant to the unlawful arrest.

41. Defendant SPELLMAN improperly arrested SHROFF and intentionally, knowingly, and recklessly subjected her to an illegal, demeaning, and invasive seizure without any reasonable justification.

42. Defendant's conduct proximately caused damages, and economic losses to SHROFF.

**SECOND CLAIM FOR RELIEF**
(§ 1983 Violation – Violation of the Right of Bodily Integrity
Only as to Plaintiff Shroff and Defendant Spellman)

43. AMY SHROFF incorporates all other paragraphs of this Complaint for purposes of this claim.

44. Defendant SPELLMAN knew that SHROFF, as a biological necessity, needed to breast feed her baby.

45. At approximately 1:00 p.m. on the day of her arrest, Defendant SPELLMAN

"permitted" SHROFF to use an electric breast pump but only if done in the presence of an unidentified third party officer.

46. This action by SPELLMAN required that SHROFF expose her breast to an officer.

47. The actions of Defendant as described herein, while acting under color of state law, intentionally deprived SHROFF of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including her right to freedom from unlawful and unreasonable searches as guaranteed by the Fourth Amendment to the Constitution of the United States of America and 42 U.S.C. §1983, in that the Defendant conducted an intrusive and illegal equivalent of a strip search in direct violation of state law, CRS 16-3-405(5) and (6), which states in relevant part:

> (2) As used in this section, "strip search" means having an arrested person remove or arrange some or all of his or her clothing so as to permit a visual inspection of the genitals, buttocks, anus, or female breasts of such person.

48. The actions described by SPELLMAN caused humiliation, embarrassment, and emotional distress to SHROFF and violated her right to bodily integrity and privacy.

**THIRD CLAIM FOR RELIEF**

(§ 1983 Violation -- Deprivation of Liberty Interest in Familial Association
On Behalf of both Plaintiffs, Against All Defendants)

49. Plaintiffs hereby incorporate all other paragraphs of this Complaint as if fully set forth herein.

50. Plaintiffs had a clearly established right to not be deprived of their liberty interest in their intimate familial association with each other, at the time of the events described herein. The right to family integrity or association protects family relationships.

51. Plaintiff SHROFF had a physical need to breast feed her baby, KRUSE.

52. Plaintiff KRUSE had a physical need to obtain the only food source which would not make her physically ill – her mother's milk.

53. Defendants SPELLMAN and UNKNOWN DEPUTY SHERIFFS all knew that this factual situation existed and all declined to permit SHROFF to be with or to breast feed KRUSE once SHROFF was taken to jail.

54. Plaintiff's liberty interest and right of familial association outweighed any state interest in depriving her of such right of intimate association under the facts and circumstances of this case.

55. Defendants' conduct as described herein, in intentionally, knowingly and recklessly preventing SHROFF from being with KRUSE, deprived Plaintiffs of their liberty interest in their intimate association with one another.

56. Defendants' conduct was engaged in maliciously or in reckless disregard of Plaintiffs' federally protected rights to intimate familial association.

57. Defendants' conduct proximately caused significant injuries, damages and losses to Plaintiffs.

58. Defendants' conduct as described throughout this Complaint deprived all Plaintiffs of their clearly established constitutional rights of which reasonable persons in Defendants' position knew or should have known.

59. It is the official custom, practice or policy of Defendant CITY AND COUNTY OF DENVER to deny breast feeding mothers the right to breast feed their babies at the Denver City Jail, even when a medical condition makes it mandatory that the baby receive her mother's milk as was the case with both Plaintiffs herein.

**FOURTH CLAIM FOR RELIEF**
(§ 1983 Violation –
Constitutional Failure to Train and/or Supervise
Against Defendants Lovingier,

and the City and County of Denver)

60. Plaintiffs incorporate by this reference all other paragraphs of this Complaint as if those allegations were set out explicitly herein.

61. The Undersheriff for the City and County of Denver, is a policy maker for the Denver Sheriff's Department and in that capacity establishes policies, procedures, customs and/or practices for its officers.

62. The John Doe Officers, under the oversight of Defendant LOVINGIER, are responsible for the custody and supervision of incarcerated persons in the Denver City Jail.

63. The policies, procedures, customs and/or practices established by Defendant LOVINGIER, and through him, by THE CITY AND COUNTY OF DENVER, and implemented by the John Doe Officers included the failure to permit SHROFF to physically breast feeding her baby or from timely utilizing her own electric breast pump for this purpose.

64. Defendant LOVINGIER developed and maintained policies, procedures, customs and practices exhibiting a deliberate indifference to the Constitutional rights of persons in the City Jail, which caused the violation of Plaintiffs' rights as set forth above.

65. Defendant LOVINGIER failed to adequately train and supervise officers of the Sheriff's Department with respect to the right of a nursing woman to breast feed her baby either directly or through the use of a breast pump which failure caused the violation of Plaintiffs' Constitutional rights as set forth above.

66. Defendants LOVINGIER and the CITY AND COUNTY OF DENVER were aware of the lack of training given to officers in the Sheriffs Department in dealing with members of the public to be free from Constitutional violations committed as described in this Complaint.

67. If any training was given to officers regarding the civil rights of members of the public to be free from the Constitutional violations described in this Complaint, the Defendants knew that such training was reckless or grossly negligent and that misconduct in that area was almost inevitable.

68. Defendants had a statutorily and constitutionally imposed duty to protect the constitutional rights of the members of the public from violations of those rights by members of the Sheriffs Department. By failing to properly train such officers, including Defendants, the above named Defendants violated Plaintiffs' constitutional rights.

69. The direct result of Defendants' failure to train was the violation of Plaintiffs' rights as previously described herein, including pain and suffering, compensatory and punitive damages to be decided by the jury.

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and against the Defendants, and grant:

(a) Appropriate declaratory and other injunctive and/or equitable relief;

(b) Compensatory and consequential damages, including damages for emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(c) All economic losses on all claims allowed by law;

(d) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(e) Attorneys fees and the costs associated with this action, including those associated with having to defend against the false criminal charge as well as expert witness fees,

on all claims allowed by law;

(f) Pre- and post-judgment interest at the lawful rate.

(g) Any further relief that this court deems just and proper, and any other relief as allowed by law.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this ___ day of July, 2007.

KILLMER, LANE & NEWMAN, LLP

s/ David A. Lane

David A. Lane
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
Attorney for Plaintiff