**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 07-cv-01466-REB-KMT

AMY SHROFF, and
LAILA KRUSE, a minor by her mother and next friend AMY SHROFF,

     Plaintiffs,

v.

FRANK SPELLMAN, in his official and individual capacity,
CITY AND COUNTY OF DENVER, a municipality,
WILLIAM LOVINGIER, in his official capacity, and
UNKNOWN DENVER DEPUTY SHERIFFS, in their official and individual capacities,

     Defendants.

---

## ORDER CONCERNING MOTIONS FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

     This matter is before me on the following: (1) the **Motion for Summary Judgment by Defendant Frank Spellman** [#43][1], filed August 6, 2008; and (2) the **Motion for Summary Judgment by Defendants City and County of Denver and William Lovingier** [#44], filed August 6, 2008. The plaintiffs filed responses [#53 & #54] to both motions, and the defendants filed replies [#61 & #63] in support of their motions. I grant Spellman's motion for summary judgment in part and deny it in part. I grant the motion for summary judgment filed by Denver and Lovingier.[2]

---

     [1] "[#43]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

     [2] The issues raised by and inherent to the motions for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motions stand submitted on the briefs. *Cf.* **Fed. R. Civ. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.*, 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

## I. JURISDICTION

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The defendants argue that they are entitled to summary judgment because the plaintiffs have not presented evidence on certain essential elements of the plaintiffs' claims. When "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal citation and quotation omitted). Once such a motion has been supported properly, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994), *cert. denied*, 540 U.S.

1027 (1995).  In all summary judgment proceedings, the evidence in the record must be viewed in the light most favorable to the party opposing the motion.  ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 528 U.S. 815 (1999).

### III.  FACTS

For the purpose of the motions for summary judgment, the following facts are not disputed.  Plaintiff, Amy Shroff, is the mother of plaintiff, Laila Kruse (Laila).  At the time of the incidents relevant to this case, Laila Kruse was an infant.  On February 26, 2007, Laila was scheduled to have parenting time with her father, Greg Kruse.  Shroff and Kruse are estranged.  Shroff was to deliver Laila to Kruse's mother at the District Three station of the Denver Police Department.  Kruse's mother supervised Greg Kruse's parenting time with Laila.

Shroff and her stepfather were driving to the District Three station to deliver Laila when Shroff saw Kruse's car parked outside of The Campus Lounge.  Shroff stopped and parked her car directly behind Kruse's car and took a photograph of Kruse as he was returning to his car.  Shroff and her stepfather then took Laila to the police station where Laila was given to Kruse's mother.

Meanwhile, Kruse called 911 and reported that Shroff was following him and photographing him.  Defendant, Frank Spellman, a Denver Police Officer, was on patrol and received a radio dispatch indicating that Kruse had reported that his ex-girlfriend, Shroff, was stalking Kruse.  The police dispatcher reported to Spellman that Shroff was violating a restraining order.  Spellman, Kruse, and Shroff arrived separately, but contemporaneously, at the District Three station, and Spellman then interviewed Kruse, Shroff, Kruse's father, and Shroff's stepfather.  In addition, Spellman read a Temporary

Civil Protection Order that had been entered by the County Court for the City and County of Denver in case number 05W1696. *Motion for Summary Judgment by Defendant Frank Spellman* [#43], filed August 6, 2008, Exhibit 2, pp. 10 - 11. Under the terms of the protection order, Kruse is the restrained party and Shroff is the protected party. *Id*. The protection order requires Kruse to keep a distance of at least 100 yards from Shroff. *Id.*, p. 10. After conducting this investigation, Spellman arrested Shroff and charged her with violation of court orders, a Denver municipal ordinance violation. *Id.*, p. 1 (Complaint). In the Complaint prepared by Spellman, he alleged that Shroff "violated restraining order 05W1696. . . ." *Id*.

After her arrest, Shroff asked Spellman if she could use her breast pump to obtain milk for Shroff's infant daughter, Leila, before Shroff was transported to the city jail. Spellman ordered a female officer to take Shroff to a conference room where Shroff could use her breast pump. Spellman testified at his deposition that the conference room had no windows and no camera in it, while the holding cell where Shroff was being held had a camera in it. *Response to Spellman's motion for summary judgment* [#53], Exhibit 4 (Spellman Depo.), 66:24 - 67:13. Spellman said he thought Shroff would prefer to use the breast pump in the relative privacy of the conference room, with a female officer, as opposed to using the breast pump in the holding cell and in front of a camera. *Id*. Shroff says she was embarrassed, humiliated, and degraded by being required to disrobe and expose herself to a stranger, the female officer, as she pumped her breast milk.

Spellman then drove Shroff to the Denver City Jail, where she was incarcerated for about 24 hours. Spellman called the Denver City Jail and asked a Denver Sheriff's Deputy if Shroff could bring her breast pump to the Denver City Jail. Spellman was told

that Shroff could not bring her breast pump with her to the Denver City Jail.  After she

was booked into the Denver City Jail, Shroff asked several Deputy Sheriffs if she could

have her breast pump, and each time she was told that she could not have her breast

pump.  Shroff saw a nurse for a routine screening at about 5:00 p.m.  The nurse told

Shroff that she could have a breast pump brought into the jail, or Shroff could use a

manual technique for expressing milk.  According to Shroff, on February 26, 2008, she

asked several deputies in the jail if she could use her breast pump, but she was told that

she could not have or use a breast pump.

Shroff's stepfather had been calling the jail asking to deliver Shroff's breast pump

to the jail.  At about 10:00 a.m., on February 27, 2008, the day after Shroff's arrest,

Shroff was permitted to use her breast pump at the jail.  *Response to Denver and

Lvingier's motion for summary judgment* [#54], Exhibit 4 (Shroff Depo.), 31:11 - 34:15.

She was permitted to use her breast pump a second time sometime later that day while

she still was housed at the jail.  *Id.*  Shroff posted bond and was released from the

Denver City Jail at about 4:00 p.m., on February 27, 2008.

Based on these facts, Shroff asserts four claims under 42 U.S.C. § 1983.  First,

Shroff asserts a claim under the Fourth Amendment for unlawful seizure, based on

Shroff's allegation that Spellman arrested Shroff without probable cause.  Second,

Shroff asserts a claim under the Fourth Amendment for unreasonable search, based on

Shroff's claim that she was subjected to an unlawful strip search when Spellman

required a female officer to be in the conference room where Shroff was permitted to

use her breast pump shortly after her arrest.  Shroff's first and second claims are

asserted by Shroff against Spellman.

Third, Shroff and her daughter, Laila, assert a claim for an unconstitutional

deprivation of their liberty interest in familial association.  The plaintiffs allege that their constitutional right to familial association was violated when Shroff's requests to use her breast pump at the Denver City Jail were denied.  This claim is asserted against the City and County of Denver, William Lovinger, and unknown deputy sheriffs.  Shroff alleges that it was the official custom, practice, or policy of the City and County of Denver to prohibit breast feeding or use of a breast pump by breast feeding mothers in the Denver City Jail.  Lovingier is alleged to have been the Undersheriff for the City and County of Denver and the final policy maker for the Denver City Jail at the time of the events relevant to this case.  The unknown Denver Deputy Sheriffs are alleged to have worked in the Denver City Jail and to have been responsible for the denial of Shroff's request to use a breast pump while Shroff was housed in the jail.

Fourth, Shroff and Laila assert a claim for an unconstitutional failure to train and/or supervise the jail officers who were responsible for Shroff's treatment while Shroff was housed in the Denver City Jail.  This claim is asserted against Lovingier and the City and County of Denver.  The plaintiffs allege that the policies of the Denver City Jail, and the lack of adequate training and supervision of jail officers exhibit deliberate indifference to the constitutional rights of persons in the Denver City Jail.  Each of the plaintiffs' four claims are brought under 42 U.S.C. § 1983, which permits a plaintiff to assert a civil claim for violation of his or her constitutional rights by a person acting under color of state law.  The defendants seek summary judgment on each of the plaintiffs' four claims.

## IV.  FIRST CLAIM

### A.  Qualified Immunity

Spellman argues that he is shielded from Shroff's first claim by qualified

immunity.  Qualified immunity shields public officials from civil damages liability if their actions did not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" ***Pino v. Higgs***, 75 F.3d 1461, 1467 (10th Cir. 1996) (quoting ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982)). The qualified immunity doctrine "cannot be analogized to other affirmative defenses because of the interests implicated in suits against government officials.  Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." ***Pueblo Neighborhood Health Ctrs., Inc. v. Losavio***, 847 F.2d 642, 645 (10th Cir.1988). Qualified immunity is available only to defendants sued in their individual capacity. ***See Moore v. City of Wynnewood***, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

A motion for summary judgment asserting qualified immunity must be reviewed differently from other summary judgment motions. ***See Saucier v. Katz***, 533 U.S. 194, 201 (2001), ***overruled in part, Pearson v. Callahan***, ___ U.S. ___, 2009 WL 128768 (2009); ***Holland v. Harrington***, 268 F.3d 1179, 1185 (10th Cir. 2001), ***cert. denied***, 535 U.S. 1056 (2002).  After a defendant asserts qualified immunity, the burden shifts to the plaintiff. ***Scull v. New Mexico***, 236 F.3d 588, 595 (10th Cir. 2000).  To overcome a claim of qualified immunity, the plaintiff first must establish "that the defendant's actions violated a constitutional or statutory right." ***Albright v. Rodriguez***, 51 F.3d 1531, 1534 (10th Cir. 1995); ***Wilson v. Layne***, 526 U.S. 603, 609 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a constitutional right).  This burden means coming forward with specific facts establishing the violation. ***Taylor v. Meacham***, 82 F.3d 1556, 1559 (10th Cir.1996).

If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct. *Albright*, 51 F.3d at 1534. To demonstrate clearly established law, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992), *overruled in part, Williams v. City & County of Denver*, 99 F.3d 1009, 1014 - 1015 (10th Cir. 1996). The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited. *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131 (10th Cir. 1990)). In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615. However, the plaintiff need not establish a "'precise factual correlation between the then-existing law and the case at hand . . . .'" *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992), (quoting *Snell v. Tunnell*, 920 F.2d 673, 699 (10th Cir. 1990)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (quotations and citations omitted).

If the plaintiff satisfies both of these elements, then the burden shifts to the

defendant.  Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied.  *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991).  If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the court must grant qualified immunity.  *Albright*, 51 F.3d at 1535.  In short, although the court must review the evidence in the light most favorable to the plaintiff, a defendant's assertion of qualified immunity may be overcome only when the record demonstrates clearly that the plaintiff has satisfied his heavy two-part burden.  In civil rights cases, a defendant's unlawful conduct must be demonstrated with specificity.  *Davis v. Gracey*, 111 F.3d 1472, 1478 (10th Cir. 1997).

In a recent opinion, the United States Supreme Court altered somewhat the analytical process that may be used when a defendant claims the protection of qualified immunity.  *Pearson v. Callahan*, ___ U.S. ___, 2009 WL 128768 (2009).  Under *Saucier v. Katz*, a court addressing a claim of qualified immunity must determine first whether the plaintiff has adduced facts sufficient to make out a constitutional or statutory violation.  *Saucier*, 533 U.S. at 201.  Under *Saucier*, a court must address and resolve this first question before proceeding to the second sequential step of the analysis, a determination of whether the claimed constitutional or statutory right was established clearly at the time of the alleged violation.  *Id*.  In *Pearson*, the Supreme Court held that the sequential two step analysis mandated in *Saucier*

> should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson*, ___ U.S. ___, ___, 2009 WL 128768, *9.  The Supreme Court noted,

9

however, that the sequence set forth in **Saucier** often is the appropriate analytical sequence. **Id**. In this case, I conclude that the two step analysis of **Saucier**, although no longer required, is the appropriate analysis.

B. Analysis

1. Violation of a Constitutional Right - Viewing the facts in the record in the light most favorable to Shroff, as I must, I conclude that Shroff has presented specific facts, which, if true, demonstrate that Spellman violated Shroff's constitutional rights under the Fourth Amendment[3] when Shroff arrested Spellman on February 26, 2008. Under the Fourth Amendment, a warrantless arrest must be based on probable cause. **Tennessee v. Garner**, 471 U.S. 1, 6 - 8 (1985). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." **Jones v. City and County of Denver**, 854 F.2d 1206, 1208 - 10 (10th Cir. 1988). The probable cause standard requires an officer reasonably to interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before making a warrantless arrest. **Romero v. Fay**, 45 F.3d 1472, 1476 (10th Cir. 1995). A police officer who makes an arrest based on a reasonable but mistaken belief that probable cause exists is entitled to the protection of qualified immunity. **Romero**, 45 F.3d at 1476.

In this case, Spellman interviewed the relevant witnesses available to him,

---

[3] As a Denver Police Officer, Spellman was acting under color of the law of the state of Colorado. The strictures of the Fourth Amendment are made applicable to state actors, such as Spellman, under the Due Process Clause of the Fourteenth Amendment. **See, e.g., Dunaway v. New York**, 442 U.S. 200, 207 (1979).

viewed the picture of Kruse taken by Shroff as Kruse approached his vehicle, and reviewed the terms of the civil protection order. Again, the civil protection order restricts the actions of Kruse, and not those of Shroff. Spellman says he understood the protection order to mean that Shroff could violate the protection order by intentionally going within 100 yards of Kruse. *Spellman motion for summary judgment* [#43], Exhibit 1 (Spellman Depo.), 12:7 - 10. Specifically, Spellman says he read a standard provision in the order to mean that Shroff's behavior also was limited by the order. *Id.*, 11:13 - 12:10. The standard provision cited by Spellman provides that the protected party (Shroff) "can not give the Restrained Person permission to change or ignore this Order in any way. **ONLY THE COURT CAN CHANGE THIS ORDER**." *Spellman motion for summary judgment* [#43], Exhibit 2, p. 11 (emphasis in original). I conclude that this provision of the protection order cannot reasonably be read to indicate that Shroff was prohibited from moving within 100 yards of Kruse. I conclude also that the protection order, considered as a whole, cannot be read reasonably to include limitations on Shroff's actions.

Absent some reasonable basis to conclude that the civil protection order restricted Shroff's actions, Spellman could not conclude reasonably that Shroff had violated the terms of the civil protection order. Absent a reasonable basis to conclude that Shroff had violated the terms of the civil protection order, Spellman could not conclude reasonably that Shroff had committed a criminal offense by violating the order.

Spellman argues also that he had probable cause to arrest Shroff for harassment, a crime defined by §18-9-111(1)(c), C.R.S. Under this statute, "(a) person commits harassment if, with the intent to harass, annoy, or alarm another person, he or she . . .(f)ollows a person in or about a public place." I conclude that Spellman did not

have probable cause to arrest Shroff for harassment.  The record indicates that Spellman was informed that Shroff had stopped and parked her car near Kruse's car when she observed Kruse's car outside of the Campus Lounge as Shroff and her stepfather were driving to the police station.  Shroff parked her car and took a picture of Kruse as he approached his vehicle.  Shroff then proceeded to the police station. Nothing in the record indicates that Shroff was following Kruse after Shroff took the picture of Kruse.  These facts, as known to Spellman, do not support a reasonable belief that Shroff was committing harassment by following Kruse, and, thus, do not demonstrate probable cause to arrest Shroff for harassment.

2.  Clearly Established Law - "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." **Olsen v. Layton Hills Mall**,  312 F.3d 1304, 1312 (10th Cir. 2002).  When Spellman arrested Shroff on February 26, 2008, clearly established law held that a warrantless arrest made without probable cause constitutes a violation of the arrestee's Fourth Amendment right against unreasonable seizure.  The authority for this proposition is voluminous.

Spellman argues that Shroff can overcome Spellman's assertion of qualified immunity only if Shroff cites Tenth Circuit or Supreme Court authority that provides expressly that a police officer acts unreasonably in believing he or she has probable cause in the specific circumstances faced by Spellman when he arrested Shroff. *Spellman's motion for summary judgment* [#43], filed August 6, 2008, pp. 10 - 11.  This is not correct.  A plaintiff seeking to overcome a claim of qualified immunity need not establish a "precise correlation between the then-existing law and the case at hand." **Patrick v. Miller**, 953 F.2d 1240, 1249 (10th Cir.1992).  "[W]hether an official protected

by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)  (quotations and citations omitted). Here, the legal rules were established clearly at the time of Shroff's arrest, and the objective legal reasonableness of the arrest can be assessed in light of the clearly established rules.

3.  <u>Conclusion</u> - Shroff has come forward with evidence that demonstrates a violation of her constitutional rights, and she has demonstrated that the constitutional right in question was established clearly at the time of the alleged violation.  Shroff has satisfied both of the elements that she must satisfy to overcome Spellman's assertion of qualified immunity as to Shroff's first claim.  Unless Spellman has demonstrated that there is no disputed issue of material fact relevant to the immunity analysis, his motion for summary judgment based on qualified immunity must be denied. *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991).  Viewing the evidence in the current record in the light most favorable to Shroff, I conclude that there remain genuine issues of material fact that are relevant to her Fourth Amendment unlawful seizure claim. Spellman's motion for summary judgment on Shroff's first claim must be denied.

**V.  SECOND CLAIM**

Spellman argues that he is entitled to the protections of qualified immunity as to Shroff's second claim, her claim under the Fourth Amendment for unreasonable search.

<u>A.  Qualified Immunity</u>

The qualified immunity law and analysis discussed above is applicable to this claim.

<u>B.  Analysis</u>

<u>1.  Violation of a Constitutional Right</u> - Again, shortly after her arrest, Shroff asked that she be permitted to use her breast pump.  Spellman permitted Shroff to use her breast pump in a private conference room, but Spellman insisted that a female officer be in the room while Shroff used her breast pump.  Shroff claims this constitutes an unreasonable strip search, in violation of the Fourth Amendment.

The circumstances described above constituted a search of Shroff. The next question under the Fourth Amendment is whether or not the search was reasonable.

> The Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." ***Bell v. Wolfish***, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." ***Id***.  With respect to the scope of the search, "[t]here can be no doubt that a strip search is an invasion of personal rights of the first magnitude." ***Chapman v. Nichols***, 989 F.2d 393, 395 (10th Cir.1993).

***Archuleta v. Wagner***, 523 F.3d 1278, 1283 -1284 (10th Cir. 2008).

In the circumstances of this case, the only justification for requiring Shroff to be observed while she used her breast pump was the fact that Shroff was under arrest. Spellman says he required that a female officer be present in the room because Shroff "was a prisoner so I had to have somebody with her at all times or leave her in the holding cell."  *Response to Spellman's motion for summary judgment* [#53], Exhibit 4 (Spellman Depo.), 68:17 - 20.  As discussed above, however, Shroff has come forward with sufficient evidence to permit a reasonable finder of fact to conclude that Shroff was

arrested by Spellman without probable cause.  If Shroff's arrest was not valid, then the arrest cannot be used as a legitimate justification to conduct any kind of search of Shroff.  Again, the Fourth Amendment requires a balancing of the need for a particular search against the invasion that the search entails.  An invalid arrest does not demonstrate a valid need for a search.  Stated differently, if Spellman could not conclude reasonably that he had probable cause to arrest Shroff, then Spellman could not conclude reasonably that a search of Shroff was reasonable because Shroff was under arrest.  A search conducted by a police officer without any valid need cannot be justified under the applicable Fourth Amendment standard.

2.  Clearly Established law - Shroff cites a litany of cases which hold that a strip search of an individual who is under arrest for a minor offense is unreasonable, absent reasonable suspicion that the person possesses contraband or a weapon.  *Response to Spellman's motion for summary judgment* [#53], filed September 5, 2008, p. 27 - 28. This proposition is clearly established law.  Further, the Fourth Amendment's reasonableness requirement, and the requirement that a law enforcement officer balance the need for a search against the invasion of personal rights that a search entails, long has been clearly established law.  ***See, e.g., Bell v. Wolfish***, 441 U.S. 520, 559 (1979).  Shroff has demonstrated that the right at issue here, her right not to be subjected to an unreasonable search, was established clearly at the time of the search in question.

3.  Conclusion - With regard to her second claim, Shroff has come forward with evidence that demonstrates a violation of her constitutional rights, and she has demonstrated that the constitutional right in question was established clearly at the time of the alleged violation.  Shroff has satisfied both of the elements she must satisfy to

overcome Spellman's assertion of qualified immunity as to Shroff's second claim. Unless Spellman has demonstrated that there is no disputed issue of material fact relevant to the immunity analysis, his motion for summary judgment based on qualified immunity must be denied. ***Salmon v. Schwarz***, 948 F.2d 1131, 1136 (10th Cir.1991). Viewing the evidence in the current record in the light most favorable to Shroff, I conclude that there remain genuine issues of material fact that are relevant to her Fourth Amendment unlawful search claim. Spellman's motion for summary judgment on Shroff's second claim must be denied denied.

## VI.  CLAIMS THREE & FOUR

In her third claim, Shroff asserts that the City and County of Denver and defendant William Lovingier, the Undersheriff in charge of the Denver City Jail, are liable for the violation of Shroff's constitutional right to familial association.[4]  Shroff alleges that her right to familial association was violated at the Denver City Jail because she was not permitted to use her breast pump until about 10:00 a.m., on February 27, 2008, the day after Shroff was arrested.  She alleges further that it is the official custom, practice, or policy of the City of Denver to deny breast feeding to breast feeding mothers in the Denver City Jail.  In her fourth claim, Shroff alleges that Lovingier and the City of Denver are liable for the constitutional violation resulting from Shroff's inability to use her breast pump while she was incarcerated in the Denver City Jail.  Shroff alleges that Lovingier and Denver failed adequately to train and supervise jail staff to prevent such violations.  Shroff does not allege that Denver or Lovingier were involved directly in denying Shroff's requests to use her breast pump.  Rather, Shroff seeks to impose

---

[4]  Shroff voluntarily has dismissed her third claim as to defendant Spellman.  *Response to Sepllman's motion for summary judgment* [#53], filed September 5, 2008, p. 30.

liability on Lovingier in his official capacity because Lovingier had supervisory authority over the jail and its employees and because Lovingier maintained an official custom, practice, or policy to prohibit breast feeding by breast feeding mothers who were incarcerated in the Denver City Jail.  Shroff seeks to impose liability on the City and County of Denver because Denver allegedly maintained such a policy.  The qualified immunity defense is not applicable to these defendants because qualified immunity is applicable only to individual defendants sued in their individual capacities. *See Moore v. City of Wynnewood*, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

### A.  Right of Familial Association

The right of familial association is a Fourteenth Amendment substantive due process protection.  *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993); *J.B. v. Washington County*, 127 F.3d 919, 927 - 928 (10th Cir. 1997).  To establish a § 1983 claim asserting a violation of a plaintiff's right to familial association, the plaintiff must allege and prove that the defendant intended "to interfere with a *particular* relationship protected by the freedom of intimate association . . . ."  *Trujillo v. Board of County Com'rs of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1985) (emphasis added).

> Not every statement or act that *results* in an interference with the rights of intimate association is actionable.  Rather, to rise to the level of a constitutional claim, the defendant must *direct* his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship.

*Griffin*, 983 F.2d at 1548 (citing *Trujillo*, 768 F.2d at 1190) (emphasis in original).  In *Trujillo*, the court concluded that conduct by a state actor works "an unconstitutional deprivation of the freedom of intimate association only if the conduct was directed at that right."  *Trujillo*, 768 F.2d at 1190.

In  *J.B. v. Washington County*, the defendant county officials removed a seven

year-old child from her parents for 18 hours.  The purpose of the removal was to investigate an allegation of child abuse.  J.B., the mother, and L.B., the child, filed suit alleging, *inter alia*, that the county officials had violated their right to familial association when the county officials removed L.B. from her parent's home.  The court noted that an evaluation of a party's Fourteenth Amendment substantive due process right to familial association requires a balancing of the party's liberty interests against the relevant state interests.  ***J.B. v. Washington County***, 127 F.3d 919, 927 (10th Cir. 1997).  The court concluded that the defendants were entitled to summary judgment on the plaintiffs' familial association claim because there was "no evidence that [the defendant County officials] intended or directed their conduct in this matter at the familial relationship of L.B. and J.B. with knowledge that such conduct would adversely affect the relationship . . . ."  *Id*. at 928 (brackets in original).  The court noted also that the plaintiffs had not alleged that the defendants were motivated by any purpose other than pursuing and completing their child abuse investigation.  *Id*. at 927 - 928.

### B.  Supervisory and Municipal Liability

A supervisor such as Lovingier is not liable under § 1983 unless an affirmative link exists between the alleged constitutional deprivation and either the supervisor's personal participation in the violation, his exercise of control or direction, or his failure to supervise.  ***Meade v. Grubbs***, 841 F.2d 1512, 1527 - 1528 (10th Cir. 1988).  The supervisor must have participated or acquiesced in the alleged constitutional deprivations.  *Id*.  A supervisor may be held liable when there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable.  *Id*.  A supervisor also may be held liable when the supervisor establishes or maintains an unconstitutional policy or custom.  *Id*

A plaintiff suing a municipality under § 1983 for the actions of one of its police officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipality or other local government unit is liable for constitutional torts only if the alleged unconstitutional acts implicate a policy, ordinance, or custom of the local government. *Monell v. Department of Social Services*, 436 U.S. 658, 690, 694 (1978); *Garcia v. Salt Lake County*, 768 F.2d 303, 308 & n.4 (10th Cir. 1985). A municipality is responsible under § 1983 only when the execution of a government policy or custom actually causes an injury of constitutional dimensions. *Monell*, 436 U.S. at 694; *see also D.T. v. Independent School District*, 894 F.2d 1176, 1187 (10th Cir. 1990) (plaintiff must prove direct nexus between constitutional tort and municipality's authorization or approval thereof, either expressly or otherwise, by the adoption of any plan or policy). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

## C. Analysis

In the present case, there is no evidence that any of the deputy sheriffs in the Denver City Jail who denied Shroff's requests to use her breast pump intended to interfere with the particular relationship between Shroff and Laila, or that these deputies willfully or intentionally directed their alleged conduct at this particular relationship. Absent such evidence, Shroff's familial association claim fails. *Trujillo v. Board of*

*County Com'rs of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1985); *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993); *J.B. v. Washington County*, 127 F.3d 919, 927 - 928 (10th Cir. 1997).  As in *J.B. v. Washington County*, the fact that the deputies may have been aware that Shroff was the mother of an infant child and that Shroff was being prevented from providing breast milk to her child, does not establish a claim for violation of Shroff and Laila's right of familial association.  Rather, to establish such a claim Shroff also must come forward with some evidence that the deputies willfully and intentionally directed their conduct at this particular relationship.  As in *J.B.*, the fact that the deputies knowingly caused a separation between Shroff and Laila in the course of performing their duties at the jail, without more, does not establish such a claim.  *J.B.*, 127 F.3d at 927 - 928.

Absent an underlying constitutional violation, Lovingier and Denver are not subject to supervisory or municipal liability for the alleged violation of the plaintiffs' right of familial association.  Absent an underlying violation, a reasonable fact finder cannot conclude that an alleged custom, policy, practice, or failure to train caused a constitutional violation.  Viewing the facts in the record in the light most favorable to Shroff and Laila, Lovingier and Denver are entitled to judgment as a matter of law on Shroff's third and fourth claims.

## VII.  UNKNOWN DEFENDANTS

In the caption of their Complaint, the plaintiffs name as defendants "UNKNOWN DENVER DEPUTY SHERIFFS, in their official and individual capacities."  *Complaint* [#1], filed July 12, 2007, p. 1.  There is no indication in the record that the plaintiff has identified any of the unknown Denver Deputy Sheriffs named in the Complaint.  Absent some identifying information for the unknown deputy sheriffs, no timely effort can be

20

made to serve such defendants, as required by Fed. R. Civ. P. 4.  Absent service, of course, the court does not have jurisdiction over the unnamed defendants.  The deadline for joinder of parties and amendment of pleadings expired on December 7, 2007.  *Scheduling Order* [#18], filed November 7, 2007, pp. 8 - 9.  The discovery cut off expired on May 30, 2008.  *Docket Text Entry* [#33], filed May 7, 2008.  In short, the plaintiffs have given the court no indication that they intend to attempt to amend their complaint to name particular deputy sheriffs in place of the unknown deputy sheriffs named in the Complaint, and the deadline for joining additional parties is long past.  For these reasons, I conclude that the plaintiffs' claims against unknown Denver Deputy Sheriffs should be dismissed for failure to prosecute.  Fed. R. Civ. P. 41(b).

## IIX.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Motion for Summary Judgment by Defendant Frank Spellman** [#43], filed August 6, 2008, is **DENIED**;

2.  That the **Motion for Summary Judgment by Defendants City and County of Denver and William Lovingier** [#44], filed August 6, 2008, is **GRANTED**;

3.  That the plaintiffs' third and fourth claims, claims asserted against defendants, William Lovingier and the City and County of Denver, are **DISMISSED** with prejudice; and

4.  That the plaintiffs' claims against the defendants named in the caption of the Complaint [#1] as "UNKNOWN DENVER DEPUTY SHERIFFS, in their official and individual capacities"[5] are **DISMISSED** for failure to prosecute under Fed. R. Civ. P.

---

[5] *Complaint* [#1], filed July 12, 2007, p. 1.

41(b);

     5.  That defendants, William Lovingier, the City and County of Denver, and Unknown Denver Deputy Sheriffs, are **DROPPED** from this action because the claims asserted against these defendants have been dismissed, and the caption of this case shall be **AMENDED** accordingly.

     Dated January 27, 2009, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge
